Daniel G. Albert, J.
This is an article 78 CPLR proceeding instituted by the petitioner against the respondents, New York State Liquor Authority and the New York City Alcoholic Beverage Control Board, wherein petitioner seeks to review a determination made by the respondent, New York State Liquor Authority, disapproving petitioner’s application for a Summer liquor license to sell alcoholic beverages for on-premises consumption in its restaurant known as “ The Hollywood Celebrity Room and Whiskey A-Go-Go ” at the New York World’s Fair.
The papers submitted on this application indicate that the president and principal stockholder of the petitioner corporation is one Leonard E. Hurtz, Jr., a resident of California whose principal occupation is the operation of a number of restaurants in various States. The petitioner corporation is one of Hurtz’s enterprises and he owns 93% of the issued and outstanding stock therein. In 1963 and 1964 Hurtz, through four separate corporate entities established four different restaurant operations on the premises of the World’s Fair, namely the Oregon Pavillion, the Montana Pavillion, the Garden Restaurant (Hollywood Pavillion) and the Hollywood Celebrity Room (also located in the Hollywood Pavillion).
The four separate operations were licensed by the respondent, New York State Liquor Authority in 1964, the Hollywood Celebrity Room and Oregon Pavillion being granted restaurant liquor licenses, and the Garden Restaurant and Montana Pavillion being given eating place beer licenses. Prior to the opening of the second year of the World’s Fair (1965), it appears that the four separate corporate entities were consolidated into the one entity which is now the corporate petitioner in this application, House of Herbs, Inc., and the petitioner’s operations were extended by the acquisition of a fifth restaurant known as the Studio Cafe, which was also located in the Hollywood Pavillion. Hence this petitioner now operates three restaurants in the Hollywood Pavillion and one each in the Oregon and Montana Pavillions.
Petitioner filed five applications for licenses in 1965 with the respondent, State Liquor Authority, and four were issued. The application for the Hollywood Celebrity Room in the *926 Hollywood Pavillion was rejected and petitioner seeks by this application to review the rejection of this application on the ground that it was unreasonable and arbitrary and should be nullified by the court.
Petitioner states that it took cognizance of the so-called “ discotheque craze ” that has become country-wide and, being aware that this was originated by a night club in Los Angeles, California known as “ Whiskey A-Go-Go ”, Hurtz, petitioner’s president and principal stockholder, was put in contact with a practicing attorney in Los Angeles by the name of Theodore S. Flier, one of the principals and also attorney for the organization which owned the “ Whiskey A-Go-Go ” operation. After some negotiation it developed that the California operation would permit the use of its name and lend some promotional help to petitioner in establishing a similar operation at the World’s Fair, provided also that petitioner would help finance a similar operation in the City of New York. Hurtz swears that all of his negotiations were with the attorney, Flier, and that an oral arrangement was entered into whereby petitioner would seek to establish a “Whiskey A-Go-Go ” operation in New York City as well as at the World’s Fair and that the California people would receive a 25% interest in the net profits of the New York operation. Thereupon application for the New York club was filed simultaneously with that for the Hollywood Celebrity Boom and petitioner apparently made a full and frank and complete disclosure of the facts to the respondent, New York State Liquor Authority, including a disclosure of the interest that Flier would receive from the World’s Fair operation (25% of the net profit), etc.
This fifth application for a liquor license was denied by the respondents on the ground that certain persons interested in “Whiskey A-Go-Go” in California were reputed to be associated with some persons of questionable reputation.
The record discloses that immediately following this rejection by the respondent, State Liquor Authority, the petitioner withdrew all arrangements and understandings which had theretofore been made with the “Whiskey A-Go-Go” people in California and so advised the respondents; and a new application Avas thereupon made which also resulted in a rejection by the respondent on or about June 14, 1965, the reason apparently being similar to that ground upon which the original application was rejected.
The rejection of the first application was made by the respondent, State Liquor Authority, together with the disapproval voiced by the New York City Alcoholic Beverage *927 Control Board, The second application however was rejected by the respondent, State Liquor Authority, following the conditional approval thereof by respondent, New York City Alcoholic Beverage Control Board.
There is no doubt in the court’s mind that the petitioner was completely innocent of any possible wrongdoing when it entered into the arrangement with the “ Whiskey A-Go-Go ” people in California through their attorney, Flier. The court is completely satisfied that the president and principal stockholder of the petitioner corporation had no knowledge whatsoever of any possible connection between any people of questionable reputation and the “Whiskey A-Go-Go” operation in Los Angeles when he approached them and ultimately completed an arrangement to sponsor a similar operation in New York City and at the World’s Fair, And the court is similarly satisfied that upon learning of the possible connections between the “ Whiskey A-Go-Go ” operation in California and the suspected associations with people of questionable repute, that the petitioner forthwith undertook to divorce itself completely from the California operation or any of its principals or associates thereof.
The petitioner, already the holder of four licenses from the respondent, State Liquor Authority, if it is to be considered as deserving to be the holder of these four licenses, cannot, by the same token, be considered undeserving to be the holder of a fifth license so as to be able to operate its newly established restaurant and operation at the World’s Fair during the current season.
The papers filed with the respondent, State Liquor Authority, indicate the petitioner to have a financial worth of over $5,000,000 and to have invested many hundreds of thousands of dollars in its operations at the World’s Fair, and a substantial portion of these investments are in the establishment of the location and operation for which petitioner seeks its fifth liquor license from the Authority. The president and principal stockholder of the petitioner is apparently a man of substantial financial means and of unquestionable character whose good reputation and integrity are vouched for by no less an individual than the District' Attorney of Los Angeles County who apparently has known him personally over a period of years and is obviously familiar with his character and reputation.
The respondents were undoubtedly justified in rejecting the first application filed by the petitioner for the “Whiskey A-Go-Go ” operation for the reasons stated. However, upon *928 the filing of the second application with advice from the petitioner that it has completely divorced itself from any connection whatsoever with the California operation or any of its people, and with no positive proof which can be characterized to have any evidentiary value that the petitioner was not in good faith and was other than truthful with the Authority, this court can see no reasonable or conscionable ground upon which the second application should have been rejected.
Among the most important and basic reasons for this country’s greatness, is that this is a country of laws, and not of men; and flowing from this concept we have developed the fundamental principle in our administration of justice that men are not to be condemned on mere suspicion. To hold that one can be deprived of his liberty or property upon suspicion merely, with no substantial proof in substantiation thereof, would set our entire administration of justice back to the days when there was no administration of justice and when sheer might made right. The mere fact that a governmental agency has the power to deprive one of his property, or the reasonable use thereof, does not justify such an agency in taking such action unless there be substantial proof to justify it. I find no such proof here. • This petitioner has invested substantial sums of money and is suffering substantial losses daily because it has been deprived of a fundamental right without any basis in law or fact which I can find to justify this deprivation.
Accordingly I hold that the rejection of the second application made by this petitioner to the New York State Liquor Authority for the issuance of a liquor license to sell alcoholic beverages for on-premises consumption in its restaurant known as the Hollywood Celebrity Room at the New York World’s Fair on or about June 14, 1965 was unreasonable and arbitrary and should be vacated and set aside and the respondent Authority will be directed to issue to the petitioner the license as applied for.